Good morning. May it please the Court. My name is Tom Buchel on behalf of the petitioners. I'd like to reserve two minutes for rebuttal. The Natural Gas Act has two distinct and separate provisions creating exclusive jurisdiction for judicial review of agency orders and actions related to proposed LNG terminals. 15 U.S.C. 717RB provides for jurisdiction over FERC's decision regarding the siting and construction of the LNG terminal. 15 U.S.C. 717RD1, which was added by the 2005 Energy Policy Act, provides for separate and immediate review of all agency approvals issued pursuant to federal law. Thus, the Natural Gas Act specifically contemplates that required approvals by agencies other than FERC will be reviewed separately and immediately in a court of appeals. Petitioners here invoke 717RD1 to seek immediate judicial review of the United States Coast Guard's April 9, 2009, letter of recommendation, and specifically the Coast Guard's decision to issue that LOR without first complying with the Endangered Species Act and with NEPA. Can I just cut right immediately to my problem with this or my question with this case? Is that the statutory language under which the Coast Guard issued its LOR only calls for a recommendation? There is nothing in the statute that makes that recommendation binding on FERC or requires or conditions the permit in any way in the statute. Now, I understand your argument is that, well, as a practical matter, it functions as a permit or an approval. But again, I didn't find very much in the record that supports that. So can you explain to me why, when the statute does not make it a, what did they say, a permit, license, concurrence or approval, why should we deem it to be one for purposes of our jurisdiction? Yes, Your Honor, certainly. First of all, Oregon LNG was required to apply for the LOR. The Natural Gas Act specifically excuse me, it's the Ports and Waterways Safety Act says that, 33 CFR 127.07. The Natural Gas Act FERC's regulations say the same thing, that as part of its application, Oregon LNG had to show that it had applied for the LOR. That's 15, excuse me, 18 CFR 157.21d12. They also have to submit the waterway suitability analysis to the Coast Guard. Then the Coast Guard has to issue the LOR. That's provided by 33 CFR 127.09. The 2010 Coast Guard reauthorization statute also requires that. Fall River decision by the First Circuit recognized this. But wasn't that a different case, though, because I thought in Fall River FERC made its approval expressly conditioned on the LOR. But we don't have that in this case, right? I agree that those were the facts in Fall River, Your Honor. But I believe the First Circuit also was addressing just the practical impact of the LOR when it talked about, and it's citing those regulations, that the Coast Guard was approving. It was a Coast Guard approval. It talked about how decisive the Coast Guard decision would be. So I think it was talking about both. FERC had specifically required it, plus the real, the practical effect of the LOR. Your Honor, the LOR on its face also addresses these issues. It's quite specific that this is the U.S. Coast Guard's determination on the suitability. And it's a final determination. And the LOR says that even though the LOR itself is not an enforcement action, it will be used if any vessel tries to enter the estuary without complying with its very specific risk mitigation measures. So then the Coast Guard sort of takes it back. So it goes through the review process. And in its last opinion, it says, no, this is not binding. There's a Captain of the Port letter that's a separate action which may be informed by the LOR, but it's not binding. So the Coast Guard itself disclaims that the LOR has any binding effect. Your Honor, the Coast Guard did say that. But it's interesting that they didn't actually change the terms of the LOR. And it's my experience that if an agency during the administrative appeal process wants to change its decision, it does so. There's some language in there about, well, maybe it's not quite that binding. But they don't take any of the LOR back. It's still out there with its original language. And I think, Your Honor, it's critical, and in the record we tried to point this out in our briefs, to look at what the Coast Guard said about the LOR at the time it issued it as opposed to what it's saying now when it's trying to avoid judicial review. I think that is the real, you can see the real practical impact of the LOR. And in that sense, we cited in our brief that the Coast Guard issued a press release and an executive summary of what the LOR meant. And it clearly told the public and Oregon LNG and FERC at the time that it's going to enforce this. Well, the press release sort of parrots what the LOR says. I wasn't sure why that supported it other than when they issued it, they said, well, the LOR will inform our captain of the port letter. But then as it went up the chain of command in the Coast Guard, they said, no, this is really our recommendation. It's not binding and enforceable. So given that the final opinion that we're looking at of the Coast Guard says this is not an enforceable order, why would we not give that more weight than what the original staff said in the letter? Again, Your Honor, I would focus on what the Coast Guard said at the time of the decision as opposed to when they're trying to evade judicial review. And the other thing I would focus on, Your Honor, and we cite this several times in our brief, is the Coast Guard about a week after it issued the LOR wrote FERC a letter about its jurisdiction and what FERC could do versus what the Coast Guard could do. This is the May 1st letter. It said ER 469. And the Coast Guard there quite clearly explained to FERC that FERC's in charge of the terminal, Coast Guard's in charge of regulating the vessels. That's correct, though, isn't it? I think that is correct. That is the statutory. But this, the question is whether this LOR is conditioning FERC's citing of the terminal. Correct? Your Honor. So, I mean, that is the division that the statutes lay out, it seems to me. I agree. And under the jurisdictional provisions, when you have a separate approval like this by another agency, we can seek judicial review under that jurisdictional provision. The LOR is the Coast Guard's exercise of its approval authority under the Ports and Waterways Safety Act, an area where it has exclusive jurisdiction and FERC doesn't. This is the area where the Coast Guard can act. And FERC's decision can make decisions about the citing of the approval. It can't make decisions about the transit route for the LNG tankers, the equipment that's going to go on those tankers. That letter is quite specific about that. And looking at the statutes, Your Honor, I think the Coast Guard was right in that letter. Clearly, FERC has no authority under the Natural Gas Act to regulate the vessels. The Coast Guard has large authority under several different statutes, including most significantly the Ports and Waterways Safety Act. But the Coast Guard says in order to exercise that statutory authority, there would be other decisions, steps, permits, whatever, they explain it as they explain their briefing, all of which would be independently reviewable, challengeable, et cetera, whereas this letter of recommendation, as required by the statute, is a recommendation to FERC with no binding effect. Your Honor, I would just disagree with that characterization. If you look at the practical effect of this document, LNG vessel captains are going to look at this. They're going to comply with it. As a practical matter, no LNG vessel would enter the Columbia Estuary without complying with the LOR. And I want to emphasize, it's their compliance with the LOR that causes my clients their actual harm. So other than Fall River, what, and the press releases and whatever, what does support that? I mean, I know in some, in different contexts, the Supreme Court looked at like the biological opinion issued by Fish and Wildlife Service and says as a practical matter, that's a permit. What evidence supports your argument here that as a practical matter, the LOR is actually binding and actually has an effect on vessels? Because the Coast Guard says no, it doesn't. Your Honor, I think perhaps the best evidence is what part of the record contains the Federal Environmental Impact Statement that was done for the Bradwood Terminal, and there the FEIS, where the Coast Guard was a cooperating agency, discusses the LOR and FERC and what the two agencies can do. And the analysis there is quite clear that they will need an LOR and FERC's approval. The two things are set up as equally important for the approval of the proposal. So the Coast Guard explains that Bradwood was based on a prior version of their guidance document that came into effect before the Act changed the statutory responsibility, and at that time they were doing the LOR and the FEIS in conjunction. And so now we're under a different guidance document so that Bradwood really doesn't show what the procedures are under this revised guidance document. So the guidance, the statute changed, the guidance document changed, and now we're in a new regime, as I understand their argument. Where to start? First of all, the Bradwood LOR and the Oregon LNG LOR were issued on exactly the same day. But under different regimes, right? Your Honor, that's what they say. But let's talk about the Natural Gas Act, the supposed changes. They keep saying the Natural Gas Act changed things, but as I think we point out in our reply brief fairly clearly, the Natural Gas Act actually didn't change anything with regard to the Coast Guard's jurisdiction. If anything, the 2005 amendments expand the Coast Guard's authority. The statute says FERC has exclusive jurisdiction, but all other agencies retain their existing authority. Then the definition of LNG terminal, and this was added, excludes vessels. That's a change to the statute. And finally, they added the separate jurisdictional provision by Congress, clearly contemplating there would be immediate judicial review of these other agency approvals. There's really nothing in the 2005 Act that justifies this really remarkable departure in how the Coast Guard was doing things, and certainly there's nothing there that excuses the Coast Guard from making its final regulatory determination without complying with the ESA and without complying with NEPA. And that's really why we're here today, because the Coast Guard jumped the gun like that. And there's no way, there's no reason they couldn't have done it a different way. We're not asking for a duplicative process. They easily could have done it the same way they did in Bradwood. They can inform FERC's decision by doing what they did in Bradwood, issuing a waterway suitability report, which is essentially a draft LOR, and then making their final decision after NEPA and after the ESA. The Coast Guard admits in their brief that there was no legal requirement that said they had to issue the LOR early like this. And there's nothing in the statute, the National Gas Act, as amended in 2005, that required this or in any way cut back on the Coast Guard's jurisdiction. In fact, exactly the opposite. Let me ask, just to follow up on one of your comments, do you think, I wouldn't say the government, but I'll say FERC. FERC has the obligation then to discuss this LOR in its review of the project? Your Honor, I think as part of their EIS, they will discuss the LOR's terms, but they will discuss them as a final decision. In other words, no alternative. These are the terms. Well, if it's discussed in the FERC's review and say they issue, you know, some kind of EIR, can you, in challenging that EIR, you know, go back one step and challenge the LOR, too, at that time? Your Honor, I think the answer to that is no. First of all, the jurisdictional provision here says we have to challenge things immediately, which we've done here. That's why we filed this. So if we wait. Well, but I'm assuming, I mean, my question assumes you're going to lose this case. And, Your Honor, I think if we lose this case, if it's on ripeness grounds, I would hope the Court would tell us when it is ripe. And if it's on something else, you know, when can we do this? Because as I was saying. Well, if it's just a recommendation and has no binding or practical effect, then you review the FERC's decision to the extent it integrates the LOR. Or actual final actions by the Coast Guard to the extent they integrate the LOR. So there isn't review of a mere recommendation. That's inherent in the agency action rubric. Certainly, Your Honor. And again, the Coast Guard is not going to make another decision. If you look, there's actually a chart in the new guidance that you were talking about, ER 354, that says they've made their decision. The LOR is done. The Coast Guard has done its job. Well, if they make a decision about vessels, though, about routes, about captain of the port letters or whatever else the Coast Guard does in exercise of its authority, wouldn't those decisions be reviewable? I think they're reviewable now. They have made that decision. Well, they haven't made those. They haven't issued a captain of the port letter. They haven't issued any denial, I guess, of your transport, their safety transport management, whatever their document is. So at the point they do make a final decision, it would seem that their final decision would be challengeable, whether informed by the LOR or not. Why isn't that the case? And again, Your Honor, from the Coast Guard's perspective, they have made their final decision. That's clear from the document. It's clear from that chart. They aren't going to make another decision. This is it. And under the statute, we have to do this now. That's why we're here now. I know you keep saying it's a final decision, but they say it's just a recommendation and that's what the statute says as well. So I guess that gets back to my first question, what makes it a final decision? And I guess I'm not sure what you're relying on for that. Other than you mentioned Bradwood, you mentioned the language in their letter and press release. I'm relying, Your Honor, first and foremost on the language of the LOR itself, which says it's their final determination of the terms, the specific risk mitigation measures. The risk mitigation measures are very specific. For example, the size of the security zone is established. There's really nothing else to decide. They've done that. As a practical matter, they've announced to everyone, these are the terms, this is what we're going to enforce. There's really nothing else for them to do. And FERC has no jurisdiction over this, so there's really nothing else for FERC to do. Down the road, we're going to get an argument that there's no jurisdiction, that we've waived our rights to go after this. And plus, they've made these decisions. And again, my clients are not harmed by violations of the LOR. My clients are going to be harmed by their compliance with this document. Vessels can now enter the estuary as long as they comply with this LOR and nothing will happen. There will be no capture of the port order. It's their compliance with the LOR that injures my clients. The vessels going into the areas where they recreate, where they work, that is the injury to my clients. And that injury is caused by the LOR, not by some final decision by FERC. You seem to be arguing that FERC has to accept the recommendation. I can do nothing about it. What are you relying on for that? Your Honor, I rely on a couple of things. One, there's nothing in the Natural Gas Act that allows FERC to regulate vessels. It regulates the siting of the terminal. The Coast Guard has jurisdiction to regulate vessels under the Ports and Waterways Security Act. That's the first step. The Bradwood FEIS explains that division quite clearly when it's talking about it. The Coast Guard does vessels and routes using the LOR. FERC does the siting of the terminal. And that's exactly how the Natural Gas Act lays it out. There simply is no statute or regulation that allows the FERC to regulate vessels. That's what the May 1st letter that the Coast Guard wrote FERC was all about. And I think the Coast Guard was right, that FERC just doesn't have the authority to regulate equipment on vessels, routes of vessels, how vessels are operated. And so what statute says the LOR is their last word and is binding on the Coast Guard and will guide them in all further actions that the Coast Guard takes to regulate vessels, other than the language in the LOR which says it be enforced through Captain of the Port Letters, which has now been disavowed by the Coast Guard? Is there anything else in the statute that says the LOR is binding on the Coast Guard? Verrilli, I can only point to the Coast Guard's process itself, which says the LOR is its, that's its job. But, again, if you look at the chart on 354. Okay. Is there anything in the statute, though? Is there anything in the Coast Guard, the Coast Guard's governing statutes? The only regulation that exists is the one that says they have to issue to LOR. Okay. And that's what they did. Do you want to? One thing that indicates finality is that there are a couple levels of administrative review, right? In other words, that the Coast Guard itself treats it as, you know, in effect what  And so, in effect, that would be a final document. Yes, Your Honor. Thank you for reminding me of that. The Coast Guard's regulations themselves required us to go through an administrative appeal process. That clearly indicates they think this is a final decision. And, in fact, the regulation says once we go through that process, it's a final agency action. Why didn't you or could you have brought a claim in district court under the APA saying that that final letter decision and the final part of the appeal was arbitrary and capricious? Could you have done that? I think no, Your Honor. And the reason I say that is because that would go against the whole Natural Gas Act that Congress has created. The whole purpose of these jurisdictional provisions is to create review in the courts of appeal and not piecemeal review in the district court. So requiring us to do that goes against the whole intent of these jurisdictional provisions. Did you want to say if you're We'll give you a minute for rebuttal. Thank you very much, Your Honor. Good morning, Your Honor. It's a minute to the court. Brian Toth from the Department of Justice representing the United States Coast Guard is the Respondent looking at counsel table. This is Mr. Charles Scott representing Oregon L&G. We'll divide our time. I'll speak for 15 minutes, and Mr. Scott will speak for 5, and I'll try and keep track of the time here. All right. The letter that's at issue in this case is the Coast Guard's recommendation as the agency who is the expert in maritime safety and security issued to the Federal Energy Regulatory Commission concerning the potential effects on vessel traffic that might result if and when FERC approves the application to site and construct the terminal. But no injury is imminent yet, because FERC has not yet completed its ongoing process to decide whether to approve or deny that application to construct the terminal. So there's no vessel traffic that's going to result at any time in the imminent future, and therefore no injury to the Petitioners that would occur. But this is the Coast Guard's final decision, and we all know that regulatory agencies make decisions that are couched in terms of this is a recommendation, but as a practical matter, it is final and binding. And so what if, for example, the Coast Guard issues an LOR that says this waterway is not suitable for LNG traffic, period? Could FERC go forward anyway and site a facility there? Are there any examples of that having happened? Right. There are no examples that I can think of where FERC has gone ahead and issued the approval over the Coast Guard's no suitability determination. But there is one example in the Case Law, Weaver's Cove LNG terminal. It's, I believe, discussed in the D.C. Circuit Case Law and possibly the Fourth Circuit Case Law. The Coast Guard did eventually issue a no suitability determination. There's nothing, to answer your question, there's nothing as a legal matter preventing FERC from going ahead over the Coast Guard's objection. Now, this might result in some sort of showdown between FERC and the Coast Guard, and nobody, that's in nobody's interest, neither FERC's nor the Coast Guard's. But being an independent regulatory agency, you know, the Coast Guard, the FERC is represented by its own counsel, not by the Department of Justice. And at the end of the day, if they want to disagree with the executive branch and the Coast Guard, they're free to do so, and the Coast Guard's remedy is through the United States Department of Justice to petition for review of that FERC order, which is a very The Coast Guard says, look, you know, we don't have to do that. We'll just let every vessel know that they can't come through this waterway, so FERC, you can site your facility, but nobody's going to come. So as a practical matter, they kill it, because nobody's going to build a terminal under that, under those circumstances. Well, that obviously wouldn't result in injury to the Petitioners here. But, for example, I guess the next question is whether an intervener or a proponent in the facility would have standing to challenge that. And I think they would have standing to challenge a final FERC order denying the siting application, but they wouldn't have the authority under the Natural Gas Act to bring a petition for review of the Coast Guard's determination. The one exception might be the situation you have in the City of Fall River case, where the FERC's order came first and was expressly conditioned on whatever further action the Coast Guard might take. Then, assuming the Coast Guard was the final piece of the puzzle that allowed things either to go forward or not go forward, they might have some remedy there. Does the Coast Guard – so once the Coast Guard has issued an LOR, opposing counsel suggests that the Coast Guard feels either as a practical matter or a legal matter, that the Coast Guard is bound by its determination and will – everything it does with respect to that waterway and those vessels after that is informed by that LOR. So the LOR does really represent its determination about how it's going to conduct things on that waterway. Is that correct? Is his representation correct? Well, I don't take issue with what he's representing as his client's position, but we don't think that's the correct view of the law under which the Coast Guard operates, and here's why. The letter of recommendation is essentially the Coast Guard's input to FERC, and it's their comments essentially on the proposal to build the liquefied natural gas terminal. And the law requires him to issue the recommendation to say to FERC, here are the effects on vessel traffic that would likely result if you approve this terminal. Now, as part of its responsibilities, the Coast Guard says, well, if you issued the – approved the terminal today and the proponent didn't do anything, then the waterway wouldn't be suitable for this vessel traffic. But they go ahead and they go further, and they say, but if you were to include these various mitigation measures, then it might make the waterway suitable. But that's eventually something for FERC to determine in issuing the permit, whether to include those suggested measures as conditions of the permit. Now, if they do so, the Petitioner's remedy will be to challenge FERC's order directly and then they get review of the FERC order. And to the extent it relies on the Coast Guard's suggestions, they can allege that that reliance was arbitrary and capricious in an attempt to set aside the order approving the terminal. But – Kagan. Are there situations that you're aware of where FERC has not adopted the mitigation measures that were in the letter of recommendation? Feigin. There aren't a lot of these. I mean, the Energy Policy Act of 2005 is, you know, fairly recent. There haven't been a lot of these applications to my knowledge. And I don't have an example that I can give you. The Weaver's Cove was an odd situation. We didn't fully brief the facts of that. I don't want to misrepresent the facts of that here. So I can't think of anything in particular. I would disagree, though, with the premise that the letter of recommendation is the Coast Guard's final word on regulating vessel traffic from the facility. It's not intended to bind the Coast Guard in the future. And that's made clear in the letter denying the administrative appeal. On pages 17 and page 19 of the excerpts of record, the Coast Guard talks about how this letter is not even intended to bind the captain of the port in the future because the captain of the port must make judgments in real time about the safety and security of the waterway when a vessel is traveling through it. It may – you know, the letter of recommendation may inform the captain of the port's judgment has to be exercised in the future based on the conditions that are occurring at the time the captain of the port decides whether a vessel should or should not go through. The regime in which the Coast Guard operates is that, I mean, it's sort of the inverse of what the Petitioners are assuming. The Coast Guard does not issue individual permits for vessel trips. If a vessel has been inspected, as it's required to be in certain circumstances under law, the assumption is that it can freely travel in navigable waterways unless directed otherwise by the captain of the port, either through a captain of the port order or there may be a regulation such as the regulation here establishing the security zone around vessels in the Columbia River that have hazardous cargo. That's a regulatory instrument, would be fully subject to NEPA and the Endangered Species Act, and it would be challengeable, as this Court allowed in the Wong case, by a party withstanding. So those are the types of regulatory decisions that the Coast Guard makes to restrict vessels that otherwise would be able to freely travel the waterway. It's the presumption is that the vessels can do so unless told otherwise by the Coast Guard. There are a number of reasons why this Court lacks jurisdiction. I'll try and start by focusing on appellate jurisdiction. Under the Natural Gas Act, the letter of recommendation is not the issuance or condition of an order or issuance or conditioning of a permit or concurrence or authorization either of the facility or of vessel traffic. It's fairly obvious that it's not a permitting of the facility, because I think even the Petitioners agree that exclusive authority rests with FERC. It's also not a condition on FERC's authority, because we see in other situations, particularly the hydropower licensing context, where other statutes give agencies authority to impose mandatory conditions that FERC is bound to accept. We've presented those statutes in our brief, and they speak in more mandatory terms that rob FERC of any discretion to reject the conditions. We don't have such a statute here. What we have is Section 3e of the Natural Gas Act, which says that for not only does FERC have exclusive authority to approve or deny the application, but they can also do so on such terms and conditions as they deem necessary or appropriate. That leaves it to FERC's discretion as to what conditions to impose on the facility. Now, there's no dispute here. I agree with Petitioners' counsel that the Coast Guard definitely does exclusively regulate vessel traffic, but that's not everything that's laid out in the letter of recommendation. A number of those measures cannot be implemented by individual vessels, things such as firefighting effort along the route, cameras installed along the transit route. These are terms that might FERC might decide to impose on the proponent, Oregon LNG, and we won't know what FERC does, what it decides to do, until it issues its order.  Essentially, I think what they're implying is that because there are two different judicial review provisions, one that allows them a remedy directly against FERC orders and one, the Section 19d, that talks about other agency orders, that somehow depriving them of review of the Coast Guard's order here would mean that Section 19d is meaningless. And that's not the case. There are plenty of other Federal and State agency actions that they could obtain review of under 19d, orders and certificates not issued by FERC. For example, 19d covers not only actions by Federal agencies, but those by State agencies acting pursuant to Federal law. So the little case law that's out there on 19d seems to largely concern, not exclusively, but largely concern State water quality certificates, for example, that are required before the Corps of Engineers can issue its approval to place dredge or fill material in waters of the United States. Those remain challengeable under 19d, even if you were to find that the Coast Guard's letter was not challengeable. So our argument does not rob 19d of its independent force and meaning. Turning to ripeness, I think it's particularly important here that, you know, we have to make sure that there's no imminent injury necessary, which is necessary for the Petitioners not only to prove their Article III standing and their injury to prove standing, but also to prove that the dispute is sufficiently right for judicial review. Well, if it was final, they would have standing, right? So in other words, if the LOR was in practical effect a permit, it's the Coast Guard's last word on what was necessary in order for the, in the Coast Guard's view, for the facility to be sited, then wouldn't that, the failure of the Coast Guard to comply with NEPA, comply with the Endangered Species Act, et cetera, wouldn't that be immediately ripe and appealable? No, I don't think it would be. I mean, the Ohio forestry language that they're relying on for their ripeness argument to that effect presumes that the party with standing can challenge violations of NEPA at the time they occur, but their standing, they have to demonstrate independently. And the only injuries that they've alleged here pertain to vessel traffic that could occur today. I mean, there's nothing in the letter of recommendation here that prohibits  So they're not going to be able to do that. So, necessary approval, let's just, from their perspective, a necessary approval is a step towards siting the LNG facility, and they've asserted aesthetic and recreational interests in the waterway. And in order for a federal agency to make that sort of approval, that will be a part of the chain that will lead to a siting, the federal agency would have to comply with the various environmental regulations, correct? If it were a major federal action, I mean, they would have standing to raise a procedural injury allegation only if they could show that they had concrete interests that were going to be impaired by the agency's decision. If they were able to prove that, that they had injury, they'd still have to meet the traceability part of the standing analysis, which I think here, we have a fairly strong argument that there's an intervening third-party action left to occur, which is that of FERC. And they are not represented by the Department of Justice. They are independent. And it's their decision whether or not to site the facility that will or will not cause vessels to come and call on the port, these LNG tankers that are really the source of the injury the Petitioner is claiming. So I think even if this was the Coast Guard's last word on whether vessels go through or not, no vessels are going to come until FERC acts to approve the facility. So if the Fish and Wildlife Service issued a biological opinion, a no-jeopardy opinion, but it still hadn't been cited by FERC, then the Fish and Wildlife Service wouldn't have to comply with NEPA because there were other steps yet to be taken? If the biological opinion is not a major federal action under NEPA, but, I mean, to get to the heart of your question, the Supreme Court's also found it's final agency action, and we wouldn't have an argument that the biological opinion wasn't immediately reviewable for lack of standing, I don't think, because of the practical consequences of that opinion. I mean, there are civil and criminal penalties that apply if an agency disregards that. So I think for that reason, that would be a different situation than we have here. But only if the other action is taken. So in other words, if it says jeopardy or no jeopardy, whichever, for building this facility or this development project, but there's still 12 other permits that would have to be obtained before you could go forward with that development project, that doesn't make the no-jeopardy opinion not final for purposes of judicial  review. Isn't that the argument they're making here, that even though it's a step along the way, it stands in the same way that a major approval necessary for a project to go forward stands for purposes of judicial review? Right. I see what you're saying. And so in that situation, I mean, I think the biological opinion is unique in that it's already been held to be final agency action. We also have seen from the Ninth Circuit recently, from this Court, that it's not a major Federal action underneath. But I think I agree with you that we wouldn't have a standing argument there. So could the – I had asked opposing counsel, could they have challenged the review, the final August opinion in district court under the APA? Well, that would be the remedy versus the petition directly in this Court. We still think, for all the reasons we outlined in our brief, there's not final agency action, and that their claims are not ripe and they don't have standing. Those defenses would still apply in the district court, but there's nothing to prevent this Court from simply ruling that they – that there's no appellate jurisdiction and leave the district court to resolve those issues. I do want to offer my colleague time. Good morning, Your Honors. May it please the Court. Charles Scott on behalf of Intervenor Respondent Oregon LNG. With me at counsel table is Jonathan Franklin. Oregon LNG, as noted, is the applicant for the FERC Section 3 authorization for an LNG terminal. I want to jump right to a question Judge Tsushima asked, which is, will FERC's analyses under NEPA and the ESA consultation process address the LOR? And the answer to that is yes. FERC has the exclusive – has been designated as the lead agency for purposes of environmental review. Its prior EISs, for example, for the Bradwood Terminal have addressed the Coast Guard's findings and recommendations on vessel traffic. And most recently, as the applicant, Oregon LNG submitted to FERC a draft biological assessment in accordance with FERC's regulations implementing the ESA. And that document, too, discusses the measures recommended in the LOR. The idea of the process is that the Coast Guard will make a recommendation that shapes the sort of project description that will then be evaluated in NEPA and ESA analyses. And I think it is worthwhile for that recommendation to be as concrete and as early as possible in the process so that as the agencies, the many agencies involved in this process continue cooperating, they will have the benefit of the Coast Guard's recommendation. And to address the question of the letter of recommendation's reviewability after a FERC order, I would say that to the extent that a FERC order incorporates measures recommended by the LOR, the FERC order would be challengeable. I think that that may have been what was contemplated down the road in the Fall River case, although I do want to make two points. The first was that I believe that the Fall River FERC order was conditioned on the Coast Guard's approval of a transit management plan, not on the letter of recommendation itself. And second, FERC chose to condition the order as it saw fit. That is exactly what the Natural Gas Act contemplates. FERC has authority under Section 3 to grant authorizations on such terms and conditions as it considers to be appropriate. So that's where the reviewability of recommendations would lie when they were incorporated by a FERC order, should they be. I want to note that there's been a lot of discussion of what the letter of recommendation's practical effect is. That's a phrase that appears in the briefs repeatedly. Practical effects are distinct from legal consequences. This is a point that's made in the Fairbanks-Northstar Borough case that we cite, 543 F. 3rd at 596. In the Bennett v. Speer decision that the Supreme Court handed down on ripeness and standing as to biological opinions, it — its decision was contingent on there being appreciable direct legal consequences from an agency's pronouncement. And it found them there through a biological opinions incidental take statement. The Coast Guard's recommendation to FERC has none of the consequences that a biological opinion could have. It is not reviewable. It is not — its lack of legal consequences goes to not only the statutory jurisdiction, also the Supreme Court's ripeness, jurisprudence, standing, and even the merits. The lack of legal consequences from the LOR is what should determine this case and should not result in the petition being dismissed or denied. Thank you. I will give you a minute for rebuttal. Thank you, Your Honor. I'd like to start with the hypothetical, I believe, was asked about what would FERC do or could FERC do with the recommendation. And I think, again, the Bradwood FEIS answers this. It says — I remember that was the situation where the LOR was going to be issued later. The FEIS says, we're going to tell vessels to do whatever the Coast Guard says. That's what it says. And that's how this works. They've made their determination. They've pointed to nothing, no other point where they are going to make a decision, a comprehensive regulatory decision. Their LOR did that. I want to emphasize that the captain of the port orders that are going to get issued, my clients wouldn't have any standing to go after those. We wouldn't even get notice of those. Those are issued to individual vessels, not — they have no — not to my clients. My clients are injured by the vessels complying with the current LOR, which allows the vessels to come in on the areas where they recreate and they work. That's the injury here, not some violation of the LOR. Thank you. Thank you. Okay. The case of Columbia Riverkeeper versus the Coast Guard and LNG Development Company is submitted.
judges: Alarcon, Tashima, Ikuta